Claire Tonry
Katelyn Kinn
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| PUGET SOUNDKEEPER ALLIANCE,<br><br>Plaintiff,<br>v.<br><br>AMAZON.COM SERVICES LLC,<br><br>Defendants. | ) | COMPLAINT |

## I. INTRODUCTION

1. This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff, Puget Soundkeeper Alliance ("Puget Soundkeeper"), seeks declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witnesses' fees, for Defendant Amazon.com Services LLC's ("Amazon"), repeated and ongoing violations of effluent standards and limitations, including the terms and conditions of its National Pollutant Discharge Elimination System ("NPDES") permit authorizing certain stormwater discharges of pollutants from Amazon's facility in Kent, Washington to navigable waters.

## II. JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction over Puget Soundkeeper's claims under Section 505(a) of the CWA, 33 U.S.C. § 1365(a). Sections 309(d) and 505(a) and (d) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a) and (d), authorize the relief Puget Soundkeeper requests.

3. Under Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Puget Soundkeeper notified Amazon of its violations of the CWA and of Puget Soundkeeper's intent to sue under the CWA by letter dated and postmarked May 6, 2026 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as Exhibit 1. The allegations in sections I through IX of the Notice Letter, except section II par. 3, par. 4, par. 6, par. 7, par. 9, par. 10, and par. 13, section V, section VI, and section IX, are incorporated herein by this reference. Puget Soundkeeper then notified Amazon of additional violations of the CWA and of Puget Soundkeeper's intent to sue under the CWA for those additional violations by letter dated and postmarked July 20, 2026 ("Supplemental Notice Letter"). A copy of the Supplemental Notice Letter is attached to this complaint as Exhibit 2. The allegations in sections I through IV of the Supplemental Notice Letter, except sections III and IV, are incorporated herein by this reference. In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1), Puget Soundkeeper notified the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, and the Director of the Washington Department of Ecology ("Ecology") of its intent to sue Amazon by mailing copies of the Notice Letter to these individuals on May 6, 2026, and also mailing copies of the Supplemental Notice Letter to these individuals on July 20, 2026.



SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

4. At the time of the filing of this Complaint, more than sixty days have passed since the Notice Letter and Supplemental Notice Letter (collectively, the “Notice Letters”) and copies thereof were issued in the manner described in the preceding paragraph.

5. The violations complained of in the Notice Letters are continuing and/or are reasonably likely to re-occur.

6. At the time of the filing of this Complaint, neither the EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations alleged in the Notice Letters.

7. The source of the violations complained of is in King County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington under Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b).

## III. PARTIES

8. Puget Soundkeeper is suing on behalf of itself and its members.

9. Puget Soundkeeper is a non-profit corporation organized under the laws of the state of Washington. Puget Soundkeeper is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters. Puget Soundkeeper is a membership organization and has at least one member who is injured by Amazon’s violations.

10. Puget Soundkeeper has representational standing to bring this action. Puget Soundkeeper’s members are reasonably concerned about the effects of discharges of pollutants, including stormwater from Amazon’s facility, on water quality and aquatic species and wildlife that Puget Soundkeeper’s members observe, study, use, and enjoy. Puget Soundkeeper’s members are further concerned about the effects of discharges from Amazon’s facility on human



SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

health. In addition, discharges from Amazon's facility lessen Puget Soundkeeper's members' aesthetic enjoyment of nearby areas. Puget Soundkeeper has members who live, work, fish, and recreate around or use Mill Creek, the Black River, the Green River, and the Duwamish River which are affected by Amazon's discharges. Puget Soundkeeper's members' concerns about the effects of Amazon's discharges are aggravated by Amazon's failure to record and timely report information about its discharges and pollution controls in a timely manner. The recreational, scientific, economic, aesthetic, and/or health interests of Puget Soundkeeper and its members have been, are being, and will be adversely affected by Amazon's violations of the CWA. The relief sought in this lawsuit can redress the injuries to these interests.

11. For example, one member of Puget Soundkeeper is a year-round open water swimmer in Puget Sound, including at Alki Beach at the mouth of Duwamish River. This member has also taken youth snorkeling at the mouth of the Duwamish. This Member also enjoys and will continue to kayak on the Duwamish River, regularly putting in at həʔapus Village Park and Shoreline Habitat, and takes annual training for self-rescue re-certification on the Duwamish River. This member enjoys in-water recreation on the Duwamish River because of the opportunities to observe wildlife and to build community with people who share these passions. This member is aware that Amazon discharges elevated levels of turbidity, oil and grease, copper, and zinc on a regular basis with its stormwater. The adverse impact of Amazon's discharges on the people, fish, and wildlife that use the river concerns this member and diminish their use and enjoyment of water and surrounding environment. This member worries that Amazon's discharges decrease the abundance of salmonids and other wildlife for them to view when in the area.



SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

12. This member is also a Puget Soundkeeper staff member who works on education, outreach, stewardship, and community service programs for Puget Soundkeeper. Among these programs are trash cleanups along the Duwamish River and volunteer boat patrols to monitor for pollution. This member also helps lead boat patrols on the Duwamish River. This member has also worked to train volunteers to conduct weekly salmon mortality surveys on Longfellow Creek, at the mouth of the Duwamish River. Data derived from these surveys support ongoing research on Urban Runoff Mortality Syndrome which is caused by 6PPD-Quinone. This member is aware of Amazon's discharge of tire wear particles, which contain 6PPD-Quinone. Their Longfellow Creek survey work adds to this member's reasonable concerns that Amazon's 6PPD-Quinone discharges are causing similar impacts in Mill Creek, harming salmon and impeding salmon recovery. This member also works with local youth volunteers on restoration and educational initiatives in and on Mill Creek, just downstream of Amazon's polluted stormwater discharges. This includes an ongoing water quality monitoring study in Mill Creek, conducted in coordination with youth leaders, which focuses on turbidity on the segment of Mill Creek which Amazon discharges to. Study results suggest that stormwater discharges from industrial facilities into Mill Creek, including from Amazon, are a source of turbidity pollution. These data combined with this member's knowledge of Amazon's own discharge data increases this member's concerns about degradation to the waterway caused by Amazon's pollutant discharges.

13. Defendant Amazon is a corporation authorized to conduct business under the laws of the state of Washington.

14. Amazon operates a facility, located at or about 20526 59th Pl S, Kent, WA 98032 (referred to herein as the "facility").



SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

## IV. LEGAL BACKGROUND

15. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA. A discharge of a pollutant from a point source to waters of the United States without authorization by a NPDES permit, issued under Section 402 of the CWA, 33 U.S.C. § 1342, is prohibited.

16. The state of Washington has established a federally approved state NPDES program administered by Ecology. Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch. 173-220. This program was approved by the Administrator of the EPA pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

17. Under Section 402 of the CWA, 33 U.S.C. § 1342, Ecology has repeatedly issued iterations of the Industrial Stormwater General Permits, most recently on December 2, 2024, which went into effect on January 1, 2025 (the "2025 ISGP"). The previous permit was issued November 20, 2019, effective January 1, 2020, and expired December 31, 2024 (the "2020 ISGP"), and the prior version was issued December 3, 2014, became effective January 2, 2015, and expired December 31, 2019 (the "2015 ISGP"). The 2015 ISGP, 2020 ISGP, and 2025 ISGP (collectively, "the Permit"), contain substantially similar requirements and authorize those that obtain coverage thereunder to discharge stormwater associated with industrial activity, a pollutant under the CWA, and other pollutants contained in the stormwater to waters of the United States subject to certain terms and conditions. The terms of the 2025 ISGP are substantially similar to those of the 2015 ISGP and 2020 ISGP, and its terms require implementation of source control and treatment best management practices from the 2015 ISGP and 2020 ISGP. All of the ongoing violations alleged in this Complaint continue to be ongoing since the 2025 ISGP went into effect.



SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

18. The Permit imposes certain terms and conditions on those covered thereby, including requirements for monitoring and sampling of discharges, reporting and recordkeeping requirements, and restrictions on the quality of stormwater discharges. To reduce and eliminate pollutants in stormwater discharges, the Permit requires, among other things, that permittees develop and implement best management practices ("BMPs") and a Stormwater Pollution Prevention Plan ("SWPPP"), and apply all known and reasonable methods of prevention, control, and treatment ("AKART") to discharges. The specific terms and conditions of the Permit are described in detail in the Notice Letter, attached hereto as Exhibit 1, and in the Supplemental Notice Letter, attached hereto as Exhibit 2, and incorporated herein by this reference.

## V. FACTS

19. Ecology granted Amazon coverage for the facility in 2018 under the 2015 ISGP under Permit number WAR304510. Ecology granted Amazon coverage for the facility under the 2020 ISGP under the same Permit number WAR304510. Ecology granted Amazon coverage for the facility under the 2025 ISGP under the same Permit number WAR304510.

20. Amazon discharges stormwater and pollutants associated with industrial activity to Mill Creek, which flows into the Black River, the Green River, and the Duwamish River.

21. Amazon's facility is engaged in industrial activities and is approximately 16 acres, which is mostly impervious. Amazon's facility has multiple distinct points of discharge where stormwater and other pollutants leave the facility, and eventually enter Mill Creek.

22. Amazon has violated and continues to violate "effluent standards or limitations," as defined by 33 U.S.C. § 1365(f), including conditions of the NPDES permit. *See* 33 U.S.C. §§ 1311(a) and 1342. Amazon's violations of the Permit and the CWA are set forth in sections I



SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

through IX of the Notice Letter attached hereto as Exhibit 1 and sections I through IV of the Supplemental Notice Letter attached hereto as Exhibit 2 and the Notice Letters are incorporated herein by this reference, except for section II par. 3, par. 4, par. 6, par. 7, par. 9, par. 10, and par. 13, section V, section VI, and section IX of the Notice Letter, and except for section III and section IV of the Supplemental Notice Letter. In particular, and among the other violations described in the Notice letters, Amazon has violated the Permit by violating water quality standards, violating AKART standards, failing to prepare and implement an adequate SWPPP, failing to implement BMPs to control water quality, failing to collect quarterly samples, violating visual monitoring requirements, failing to implement corrective actions, violating effluent limitations, failing to record information, failing to retain records, and failing to report Permit violations.

23. Amazon discharges stormwater from the facility containing levels of pollutants that exceed the benchmark values established by the Permit, including the days on which Amazon collected samples with the results identified in Table 1, and is likely to continue discharging comparably unacceptable levels of pollutants in its stormwater:

**Table 1 – Benchmark Exceedances**

| **Quarter in which sample collected** | **Turbidity (Benchmark 25 NTU)** | **Oil & Grease (Benchmark No Visible Sheen)** | **Total Cu (Benchmark 14 µg/L)** | **Total Zn (Benchmark 117 µg/L)** |
|---|---|---|---|---|
| 1st Quarter 2020 | | | | |
| 001 | | | | **140 µg/L** |
| 010 | | | | **580** |
| 012 | | | | |
| 2nd Quarter 2020 | | | | |
| 001 | | | | |
| 010 | **88 NTU** | | | **220** |
| 012 | **38.8** | | | **210** |



SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

| | | | | |
|---|---|---|---|---|
| 1st Quarter 2021 | | | | |
| 001 | | | | |
| 010 | | | | **150** |
| 012 | | | | **170** |
| 3rd Quarter 2021 | | | | |
| 001 | | | | |
| 010 | **59.5** | | | |
| 012 | **57.7** | | | |
| 4th Quarter 2021 | | | | |
| 001 | **29.15** | | | |
| 010 | | | | |
| 012 | | | | |
| 1st Quarter 2022 | | | | |
| 001 | | | | |
| 010 | **44.6** | | **16 µg/L** | **260** |
| 012 | | | | **120** |
| 2nd Quarter 2022 | | | | |
| 001 | **40.7** | | | |
| 010 | | | | |
| 012 | **27.9** | | | |
| 4th Quarter 2022 | | | | |
| 001 | **35.55** | | | |
| 010 | | | | |
| 012 | **40.4** | | | **175** |
| 1st Quarter 2023 | | | | |
| 001 | | | | |
| 010 | **31.2** | | | **220** |
| 012 | | | | **150** |
| 2nd Quarter 2023 | | | | |
| 001 | **36.4** | | | |
| 010 | | | | **120** |
| 012 | | | | |
| 3rd Quarter 2023 | | | | |
| 001 | | | | |
| 010 | | | | **120** |
| 012 | | | | **160** |
| 4th Quarter 2023 | | | | |
| 001 | | | | |
| 010 | **56.8** | **Yes** | | **190** |
| 012 | **60.7** | | | **270** |
| 1st Quarter 2024 | | | | |
| 001 | | | | |
| 010 | | | | |
| 012 | | | | **120** |



SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

| | | | | |
|---|---|---|---|---|
| 2nd Quarter 2024<br>001<br>010<br>012 | <br><br><br>**32.5** | | | <br><br><br>**190** |
| 1st Quarter 2025<br>001<br>010<br>012 | | | | <br><br>**120.5**<br>**119** |
| 1st Quarter 2026<br>001<br>010<br>012 | <br><br>**45**<br>**70** | | <br><br>**16** | <br><br>**380**<br>**400** |

*001,010, and 012 are monitoring point designations used and known by Amazon.

24. Amazon attests that the stormwater samples identified in Table 1 are representative of and accurately characterize the quality of stormwater discharges generated by Amazon's facility during the associated calendar quarters. The stormwater monitoring data provided in Table 1 shows benchmark exceedances included in the stormwater monitoring results that Amazon submitted to Ecology.

25. Amazon's stormwater discharges are causing or contributing to violations of water quality standards and therefore violate Condition S10.A of the Permits. Discharges from Amazon's facility contribute to the polluted conditions of the waters of the state, including the water quality standards of Mill Creek, the Black River, the Green River, and the Duwamish River. Discharges from Amazon's facility contribute to the ecological impacts that result from the pollution of these waters and to Puget Soundkeeper and its members' injuries resulting therefrom. These requirements and Amazon's violations thereof are described in detail in section I.A of the Notice Letter, attached hereto as Exhibit 1, and in section I.A. of the Supplemental Notice Letter, attached hereto as Exhibit 2, and are incorporated herein by this reference.

26. Amazon's exceedances of the benchmark values indicate that Amazon is failing to apply AKART to its discharges and is failing to implement an adequate SWPPP and BMPs.



SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Amazon violated and continues to violate Conditions S10.C and S3 of the Permits by not developing, modifying, and/or implementing BMPs in accordance with the requirements of the Permit, and/or by not applying AKART to discharges from the facility. These requirements and Amazon's violations thereof are described in detail in section I.B and section II of the Notice Letter, attached as Exhibit 1, and incorporated herein by this reference, except section II par. 3, par. 4, par. 6, par. 7, par. 9, par. 10, and par. 13.

27. Amazon violated the sampling requirements of Condition S4 of the Permits by failing to collect stormwater discharge samples at any of its discharge points during the third quarter 2022 and third quarter 2024, and by failing to collect stormwater samples at Outfall 010 during the second quarter 2021, and by failing to collect stormwater samples at Outfalls 001 and 010 during the first quarter 2024. Amazon also violated and continues to violate this provision because it does not sample each distinct point of discharge off-site. Amazon's violations of the Permit's requirement to collect quarterly samples are described in section III.A of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference. These violations are reasonably likely to recur.

28. Amazon violated visual monitoring requirements required by Permit Condition S7 by failing to conduct Industrial Stormwater Monthly Inspection, failing to maintain the requisite inspection reports and checklists, and failing to make the requisite certifications and summaries by qualified personnel each and every month since the beginning of the statute of limitations. Amazon violations of the Permit's visual monitoring requirement are described in section III.B of the Notice Letter, attached hereto as Exhibit 1, and incorporated herein by this reference. These violations are reasonably likely to recur.



SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

29. Amazon triggered Level One Corrective Action requirements for each benchmark exceedance identified in Table 1 above. Amazon has violated the requirements of Condition S8.B of the Permits by failing to conduct Level One Corrective Action requirements in accordance with the Permit's conditions, including the required inspection to investigate the cause; review, revision, and certification of the SWPPP; the required implementation of additional BMPs; and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, including the benchmark exceedances listed in Table 1 above. These Corrective Action requirements and Amazon violations thereof are described in section IV.A of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

30. Amazon triggered Level Two Corrective Action requirements for each benchmark exceedance identified in Table 1 above that occurred in any two quarters of a calendar year for the same pollutant parameter. Amazon has violated the requirements of Condition S8.C of the Permits by failing to conduct a Level Two Corrective Action in accordance with Permit conditions, including the required review, revision, and certification of the SWPPP, the required implementation of additional structural source control BMPs, and the required summarization in the Annual Report, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, for any two quarters during a calendar year for the same pollutant parameter, including the benchmark exceedances listed in Table 1 above. These violations include but are not limited to Amazon failure to perform Level Two Corrective Action requirements for total zinc triggered by its stormwater sampling during calendar year 2020, for turbidity triggered by its stormwater sampling during calendar year 2021, for total zinc triggered



SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

by its stormwater sampling during calendar year 2022, and for total zinc triggered by its stormwater sampling during calendar year 2024. These corrective action requirements and Amazon violations thereof are described in section IV.B of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

31. Amazon triggered Level Three Corrective Action requirements for each benchmark exceedance identified in Table 1 above that occurred in any three quarters of a calendar year for the same pollutant parameter. Amazon has violated the requirements of Condition S8.D of the Permits by failing to conduct a Level Three Corrective Action in accordance with Permit conditions, including the required implementation of additional treatment BMPs, each time during the past five years that its quarterly stormwater sampling results were greater than a benchmark, for any three quarters during a calendar year, including the benchmark exceedances listed in Table 1 above. These violations include but are not limited to Amazon's failure to perform Level Three Corrective Action requirements for turbidity triggered by its stormwater sampling during calendar year 2022, and for total zinc and turbidity triggered by its stormwater sampling during calendar year 2023. These corrective action requirements and Amazon's violations thereof are described in section IV.C of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

32. Condition S6.C of the Permit provides for a numeric effluent limitation for zinc because Amazon discharges to Mill Creek, which is 303(d)-listed for zinc. The applicable effluent limitation is a maximum daily effluent limitation of 60.47 µg/L. Amazon has violated that effluent limitation by discharging stormwater that contains elevated levels of zinc in excess



SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

of the corresponding numeric effluent limitation, including on September 2, 2026 when Amazon discharged stormwater containing at least 71 µg/L zinc. These violations are reasonably likely to recur.

33. Amazon has violated the recordkeeping requirements of Permit Condition S4.B.4 because Amazon does not record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if Amazon collected the sample within the first 12 hours of stormwater discharge event, an explanation of why Amazon could not collect a sample within the first 12 hours of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling, as required by the Permit Condition. These requirements and Amazon's violations thereof are described in section VII.A of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

34. Amazon has violated the record keeping requirements of Permit Condition S9.D. Amazon does not retain for a minimum of five years a copy of the current Permit, a copy of Amazon's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit, as required by the Permit Conditions. These requirements and Amazon's violations thereof are described in section VII.B of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.



SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

35. Permit Condition S9.F requires Amazon to take certain actions, including reporting to Ecology, in the event Amazon is unable to comply with any terms and conditions of the Permit which may endanger human health or the environment. Amazon has violated these requirements of the Permit by failing to report and subsequently correct permit violations, including each and every time Amazon violated corrective action requirements as described above in paragraphs 29-31, and each and every time Amazon discharged stormwater with amounts of pollutants in excess of the Permit benchmarks and effluent limitations as described in paragraphs 23-25 above. These requirements and Amazon's violations thereof are described in section VIII of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this reference. These violations are reasonably likely to recur.

36. A significant penalty should be imposed against Amazon under the penalty factors set forth in 33 U.S.C. § 1319(d).

37. Amazon's violations were avoidable had Amazon been diligent in overseeing facility operations and maintenance.

38. Amazon benefited economically as a consequence of its violations and failure to implement improvements at the facility.

39. Amazon's violations caused and contributed to pollution in the water column and sediments of the receiving water, which may be ameliorated by an order from the Court requiring clean up, restoration, remediation, and monitoring.

## VI. CAUSE OF ACTION

40. The preceding paragraphs and the allegations in sections I through IX of the Notice Letter attached hereto as Exhibit 1, except section II par. 3, par. 4, par. 6, par. 7, par. 9, par. 10, and par. 13, section V, section VI, and section IX, and in sections I through IV of the



SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

Supplemental Notice Letter attached hereto as Exhibit 2, except sections III and IV, are incorporated herein.

41. Amazon's violations of its NPDES permit described herein and in the Notice Letters constitute violations of "effluent standard(s) or limitation(s)" and "an order issued by . . . a State with respect to such a standard or limitation," as defined by Section 505 of the CWA, 33 U.S.C. § 1365.

42. No agency has taken an enforcement action constitution diligent prosecution or otherwise precluding claims under 33 U.S.C. §§ 1319 or 1365(a).

43. Prior notice of violations and claims was provided to Amazon and others as required.

44. These violations committed by Amazon are ongoing or are reasonably likely to recur. Any and all additional violations of the Permit and the CWA which occur after those described in Puget Soundkeeper's Notice Letters, but before a final decision in this action, should be considered ongoing violations subject to this Complaint.

45. Without the imposition of appropriate civil penalties and the issuance of an injunction, Amazon is likely to continue to violate the Permit and the CWA to the further injury of Puget Soundkeeper, its members, and others.

## VII. RELIEF REQUESTED

Wherefore, Puget Soundkeeper respectfully requests that this Court grant the following relief:

A. Issue a declaratory judgment that Amazon has violated and continues to be in violation of the Permit and the CWA



SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

B. Enjoin Amazon from operating the facility in a manner that results in further violations of the Permit and the CWA;

C. Order Amazon to immediately develop and implement a SWPPP that complies with the Permit at the facility;

D. Order Amazon to allow Puget Soundkeeper to participate in the development and implementation of Amazon's SWPPP and compliance plan;

E. Order Amazon to provide Puget Soundkeeper, for a period beginning on the date of the Court's Order and running for three years after Amazon achieves compliance with all of the conditions of the Permit, with copies of all reports and other documents which Amazon submits to Ecology regarding Amazon's coverage under the Permit at the facility at the time these documents are submitted;

F. Order Amazon to take specific actions to remediate the environmental harm caused by its violations;

G. Order Amazon to pay civil penalties of $68,445 per day of violation for each violation committed by Amazon, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19 and 19.4;

H. Award Puget Soundkeeper its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d), and any other applicable authorization; and

I. Award such other relief as this Court deems appropriate.



SMITH & LOWNEY PLLC
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

RESPECTFULLY SUBMITTED this 27th day of October, 2026

SMITH & LOWNEY, PLLC

By: By: _s/Claire Tonry_
Claire Tonry, WSBA #44497
By: _s/Katelyn Kinn_
Katelyn Kinn, WSBA #42686
Attorneys for Plaintiff
2317 E. John St.,
Seattle, WA 98112
Tel: (206) 860-2124
Fax: (206) 860-4187
E-mail: claire@smithandlowney.com,
katelyn@smithandlowney.com

# Exhibit 1

SMITH & LOWNEY
PLLC
ATTORNEYS AT LAW

May 6, 2026

**Via Certified Mail - Return Receipt Requested**

Managing Agent
Amazon.com Services LLC BF15
20526 59th Pl S
Kent, WA 98032

Managing Agent
Amazon.com Services LLC
410 Terry Ave N
Seattle, WA 98109

Re: **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION PLAN**

Dear Managing Agent:

We represent Puget Soundkeeper Alliance ("Soundkeeper"), 130 Nickerson St. #107, Seattle, WA 98109, (206) 297-7002. Any response or correspondence related to this matter should be directed to us at the letterhead address (Smith & Lowney, PLLC, 2317 E John St., Seattle, WA 98112). This letter is to provide you with sixty days' notice of Soundkeeper's intent to file a citizen suit against Defendant Amazon.com Services LLC ("Defendant") under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described below. This letter is also a request for a copy of the complete and current stormwater pollution prevention plan ("SWPPP") required by Defendant's National Pollution Discharge Elimination System ("NPDES") permit.

Defendant was granted coverage under Washington's Industrial Stormwater General Permit ("ISGP") issued by the Washington Department of Ecology ("Ecology") effective January 1, 2020 and expired on December 31, 2024 under NPDES No. WAR304510 (the "2020 Permit"). Ecology granted Defendant coverage under the current iteration of the ISGP effective January 1, 2025, and set to expire on December 31, 2029 (the "2025 Permit") and maintains the same permit number, WAR304510.

Defendant has violated and continues to violate effluent standards and limitations under the CWA (see 33 U.S.C. §§ 1365(f)) including the terms and conditions of the 2020 Permit and the 2025 Permit (collectively, the "Permits") with respect to operations of, and discharges of stormwater and pollutants from, its facility located at or about 20526 59th Pl S, Kent, WA 98032

(the "facility") as described herein, to Mill Creek. The facility subject to this notice includes any contiguous or adjacent properties owned or operated by Defendant.

Defendant is also in violation of the requirements of Administrative Order 23791, issued by Ecology on June 26, 2025, for failing to comply with the Administrative Order, as described below in Section IX of this Notice of Intent to Sue. Violation of this order is a violation of an order concerning an NPDES permit and is enforceable under 33 U.S.C. § 1365(a)(1)(B).

## I. COMPLIANCE WITH STANDARDS.

### A. Violations of Water Quality Standards

Condition S10.A of the Permits prohibits discharges that cause or contribute to violations of water quality standards. Water quality standards are the foundation of the CWA and Washington's efforts to protect clean water. In particular, water quality standards represent the U.S. Environmental Protection Agency ("EPA") and Ecology's determination, based on scientific studies, of the thresholds at which pollution starts to cause significant adverse effects on fish or other beneficial uses. For each water body in Washington, Ecology designates the "beneficial uses" that must be protected through the adoption of water quality standards.

A discharger must comply with both narrative and numeric criteria water quality standards. WAC 173-201A-010; WAC 173-201A-510 ("No waste discharge permit can be issued that causes or contributes to a violation of water quality criteria, except as provided for in this chapter."). Narrative water quality standards provide legal mandates that supplement the numeric criteria. Furthermore, the narrative water quality standard applies with equal force even if Ecology has established a numeric water quality standard. Specifically, Condition S10.A of the Permits requires that the facility's discharges not cause or contribute to an excursion of Washington State water quality standards.

Defendant discharges polluted stormwater to Mill Creek via drains and pipes. The section of Mill Creek to which Defendant discharges does not meet water quality standards and is included on the state's "303(d) list" of impaired waterbodies. Defendant discharges stormwater that contains elevated levels of turbidity, oil & grease, copper, zinc, and tire wear particles (and attendant 6PPD-Quinone) as indicated in discharge monitoring data reported under the Permit, and related reports submitted by Defendant to Ecology, as indicated in the table(s) of benchmark and numeric effluent limit excursions below. These discharges cause and/or contribute to violations of water quality standards for turbidity, oil & grease, total copper, total zinc, and 6PPD-Quinone (and related toxicity) in Mill Creek , the Black River, and ultimately into the Green/Duwamish River(s), and have occurred each and every day during the last five years on which there was 0.1 inch or more of precipitation and continue to occur. *See* WASH. ADMIN. CODE §§ 173-201A-200 (fresh water designated uses and criteria), (1)(a)(b) (general criteria that apply to all aquatic life fresh water uses), 1(e) (turbidity criteria), 2(a) (general criteria applicable to fresh water recreational uses), (4) (miscellaneous uses including wildlife habitat, harvesting commerce and navigation, boating, and aesthetics general criteria); 173-201A-600 (use designations – fresh waters); 172-201A-602 (use designations for fresh waters by water resource inventory area, including the Green/Duwamish); 173-201A-240 (toxic substances criteria for

copper and zinc); 173-201A-260 (natural conditions and other water quality criteria and applications).

**Table 1 – Effluent Limit and Benchmark Exceedances**

| **Quarter in which sample collected** | **Turbidity (Benchmark 25 NTU)** | **Oil & Grease (Benchmark No Visible Sheen)** | **Total Cu (Benchmark 14 µg/L)** | **Total Zn** (Effluent Limit 70 µg/L 2020; 32.7 µg/L 2025; **Benchmark 117 µg/L)** |
|---|---|---|---|---|
| 1st Quarter 2020 | | | | |
| 001 | | | | **140 µg/L** |
| 010 | | | | **580** |
| 012 | | | | |
| 2nd Quarter 2020 | | | | |
| 001 | | | | 110 |
| 010 | **88 NTU** | | | **220** |
| 012 | **38.8** | | | **210** |
| 4th Quarter 2020 | | | | |
| 001 | | | | |
| 010 | | | | 71 |
| 012 | | | | 95 |
| 1st Quarter 2021 | | | | |
| 001 | | | | |
| 010 | | | | **150** |
| 012 | | | | **170** |
| 2nd Quarter 2021 | | | | |
| 001 | | | | 89 |
| 010 | | | | |
| 012 | | | | 74 |
| 3rd Quarter 2021 | | | | |
| 001 | | | | |
| 010 | **59.5** | | | 88 |
| 012 | **57.7** | | | 100 |
| 4th Quarter 2021 | | | | |
| 001 | **29.15** | | | |
| 010 | | | | 82 |
| 012 | | | | |
| 1st Quarter 2022 | | | | |
| 001 | | | | |
| 010 | **44.6** | | **16 µg/L** | **260** |
| 012 | | | | **120** |
| 2nd Quarter 2022 | | | | |
| 001 | **40.7** | | | |
| 010 | | | | |

| | | | | |
|---|---|---|---|---|
| 012 | **27.9** | | | |
| 4th Quarter 2022<br>001<br>010<br>012 | <br>**35.55**<br><br>**40.4** | | | <br>91<br>84<br>**175** |
| 1st Quarter 2023<br>001<br>010<br>012 | <br><br>**31.2** | | | <br><br>**220**<br>**150** |
| 2nd Quarter 2023<br>001<br>010<br>012 | <br>**36.4** | | | <br><br>**120**<br>85 |
| 3rd Quarter 2023<br>001<br>010<br>012 | | | | <br><br>**120**<br>**160** |
| 4th Quarter 2023<br>001<br>010<br>012 | <br><br>**56.8**<br>**60.7** | <br><br>**Yes** | | <br><br>**190**<br>**270** |
| 1st Quarter 2024<br>001<br>010<br>012 | | | | <br><br><br>**120** |
| 2nd Quarter 2024<br>001<br>010<br>012 | <br><br><br>**32.5** | | | <br><br>94<br>**190** |
| 4th Quarter 2024<br>001<br>010<br>012 | | | | <br><br>100<br>82 |
| 1st Quarter 2025<br>001<br>010<br>012 | | | | <br>84<br>**120.5**<br>**119** |
| 2nd Quarter 2025<br>001<br>010<br>012 | | | | <br><br>36<br>39 |
| 3rd Quarter 2025<br>001<br>010<br>012 | | | | <br>39<br>79<br>81 |
| 4th Quarter 2025 | | | | |

| | | | | |
|---|---|---|---|---|
| 001<br>010<br>012 | | | | 39<br><br>78 |

### B. Compliance with AKART Standards

Condition S10.C of the Permits requires Defendant to apply all known and reasonable methods of prevention, control, and treatment ("AKART") to all discharges, including preparation and implementation of an adequate Stormwater Pollution Prevention Plan ("SWPPP") and best management practices ("BMPs").

Defendant has violated and continues to violate these conditions by failing to apply AKART to its discharges or to implement an adequate SWPPP and BMPs, as evidenced by the elevated levels of pollutants in its discharge indicated in Table 1 and as described below in this notice of intent to sue.

Defendant's submissions to Ecology also provide evidence of small black particles in stormwater samples which are consistent with tire wear particles. Tire traffic and tire wear particles are a significant source of pollutants, including 6PPD-Quinone. Defendant is in violation of Condition S10.C for failing to apply AKART to address tire wear particles, and failing to prepare and implement an adequate SWPPP and BMPs to address tire wear particles.

## II. STORMWATER POLLUTION PREVENTION PLAN VIOLATIONS

Defendant is in violation of the Permits' SWPPP provisions as follows:

1. Condition S3.A of the Permits requires Defendant to develop and implement a SWPPP that is consistent with permit requirements, fully implemented as directed by permit conditions, and updated as necessary to maintain compliance with permit conditions. Defendant has violated these requirements of the Permits each and every day during the last five years and continues to violate them because its SWPPP is not consistent with permit requirements, has not been fully implemented, and has not been updated as necessary.

2. The SWPPP fails to satisfy the requirements of Condition S3 of the Permits because it does not adequately describe BMPs. Condition S3.B.4 of the Permits require that the SWPPP include a description of the BMPs that are necessary for the facility to eliminate or reduce the potential to contaminate stormwater. Condition S3.A.2 of the Permits requires that the SWPPP include BMPs consistent with the Stormwater Management Manual for Western Washington (SWMMWW), available at https://fortress.wa.gov/ecy/ezshare/wq/SWMMs/2024SWMMWW/2024_SWMMWW.htm or document how stormwater BMPs included in the SWPPP are demonstratively equivalent to the practices contained in the approved stormwater technical manuals, including the proper selection, implementation, and maintenance of all applicable and appropriate BMPs. Defendant's SWPPP does not comply with these requirements because it does not adequately describe BMPs and does not include BMPs consistent with approved stormwater technical manuals nor does it include BMPs that are demonstratively equivalent to such BMPs with documentation of BMP adequacy.

3. Defendant's SWPPP fails to satisfy the requirements of Condition S3.B.2 of the Permits because it fails to include a facility assessment as mandated. The SWPPP fails to include an adequate facility assessment because it does not describe the industrial activities conducted at the site, the general layout of the facility including buildings and storage of raw materials, the flow of goods and materials through the facility, regular business hours and seasonal variations in business hours or in industrial activities, as required.

4. Defendant's SWPPP fails to satisfy the requirements of Condition S3.B.1 of the Permits because it does not include a site map that identifies significant features, the stormwater drainage and discharge structures, the contributing stormwater drainage areas for each stormwater discharge point off-site, a unique identifying number for each discharge point, each sampling location with a unique identifying number, paved areas and buildings, areas of pollutant contact associated with specific industrial activities, areas where industrial activity is conducted, conditionally approved non-stormwater discharges, surface water locations, areas of existing and potential soil erosion, vehicle maintenance areas and areas where equipment cleaning is conducted, locations where vehicles are parked or stored, and lands and waters adjacent to the site that may be helpful in identifying discharge points or drainage routes.

5. Defendant's SWPPP fails to comply with Condition S3.B.2.b of the Permits because it does not include an inventory of industrial activities that identifies all areas associated with industrial activities that have been or may potentially be sources of pollutants as required. The SWPPP does not identify all areas associated with loading and unloading of material handled at the facility, outdoor storage of materials or products, outdoor manufacturing and processing, onsite dust or particulate generating processes, on-site waste treatment, storage, or disposal, vehicle and equipment fueling, maintenance, and/or cleaning, roofs or other surfaces exposed to air emissions from a manufacturing building or a process area, and roofs or other surfaces composed of materials that may be mobilized by stormwater as required by these conditions.

6. Defendant's SWPPP does not comply with Condition S3.B.2.c of the Permits because it does not include an adequate inventory of materials. The SWPPP does not include an inventory of materials that lists the types of materials handled at the site that potentially may be exposed to precipitation or runoff and that could result in stormwater pollution, a short narrative for material describing the potential for the pollutants to be present in stormwater discharge that is updated when data becomes available to verify the presence or absence of the pollutants, a narrative description of any potential sources of pollutants from past activities, materials and spills that were previously handled, treated, stored, or disposed of in a manner to allow ongoing exposure to stormwater as required. The SWPPP does not include the method and location of on-site storage or disposal of such materials and a list of significant spills and significant leaks of toxic or hazardous pollutants as these permit conditions require.

7. Defendant's SWPPP does not comply with Condition S3.B.3 of the Permits because it does not identify specific individuals by name or title whose responsibilities include SWPPP development, implementation, maintenance and modification.

8. Condition S3.B.4 of the Permits requires that permittees include in their SWPPPs and implement certain mandatory BMPs unless site conditions render the BMP unnecessary or

infeasible, and an alternative and demonstrably equivalent BMP is provided. Defendant is in violation of this requirement because it has failed to include in its SWPPP and implement the mandatory BMPs of the Permits.

9. Defendant's SWPPP does not comply with Condition S3.B.4.b.i of the Permits because it does not include required operational source control BMPs in the following categories: good housekeeping (including definition of ongoing maintenance and cleanup of areas that may contribute pollutants to stormwater discharges, and a schedule/frequency for each housekeeping task); preventive maintenance (including BMPs to inspect and maintain stormwater drainage, source controls, treatment systems, and plant equipment and systems, and the schedule/frequency for each task as well as a maintenance log for completing each task); spill prevention and emergency cleanup plan (including BMPs to prevent spills that can contaminate stormwater, for material handling procedures, storage requirements, cleanup equipment and procedures, and spill logs); employee and contractor/vendor training (including an overview of what is in the SWPPP who is responsible for maintaining the SWPPP, and its location onsite, how employees make a difference in complying with the SWPPP and their role in ensuring proper maintenance of BMPs, spill response procedures, good housekeeping, maintenance requirements, and material management practices, how training will be conducted, the frequency/schedule of training, a log of the dates on which specific employees received training, and a report of all electronically performed trainings, as applicable); inspections and recordkeeping (including documentation of procedures to ensure compliance with permit requirements for inspections and recordkeeping, identification of personnel who conduct inspections, provision of a visual inspection report or checklist, provision of a tracking or follow-up procedure to ensure that a report is prepared and appropriate action taken in response to visual monitoring, definition of how Defendant will comply with signature and record retention requirements, certification of compliance with the SWPPP and Permit, and all completed inspection reports).

10. Defendant's SWPPP does not comply with Condition S3.B.4.b.i.7 of the Permits because it does not include measures to identify and eliminate the discharge of process wastewater, domestic wastewater, noncontact cooling water, and other illicit discharges to stormwater sewers, or to surface waters and ground waters of the state.

11. Defendant's SWPPP does not comply with Condition S3.B.4.b.ii of the Permits because it does not include required structural source control BMPs to minimize the exposure of manufacturing, processing, and material storage areas to rain, snow, snowmelt, and runoff.

12. Defendant's SWPPP does not comply with Condition S3.B.4.b.iii of the Permits because it does not include treatment BMPs as required.

13. Defendant's SWPPP fails to comply with Condition S3.B.4.b.v of the Permits because it does not include BMPs to prevent the erosion of soils or other earthen materials and prevent off-site sedimentation and violations of water quality standards.

14. Defendant's SWPPP fails to satisfy the requirements of Condition S3.B.5 of the Permits because it fails to include a stormwater sampling plan as required. The SWPPP does not include a sampling plan that: identifies points of discharge to surface waters, stormwater drainage

systems, or discrete groundwater infiltration locations; documents why each discharge point is not sampled; identifies each sampling point by its unique identifying number; identifies staff responsible for conducting stormwater sampling; specifies procedures for sampling collection and handling; specifies procedures for sending samples to the a laboratory; identifies parameters for analysis, holding times and preservatives, laboratory quantitation levels, and analytical methods, and that specifies the procedure for submitting the results to Ecology.

## III. MONITORING AND REPORTING VIOLATIONS

### A. Failure to Collect Quarterly Samples

Condition S4.B of the Permits requires Defendant to collect a sample of its stormwater discharge once during every calendar quarter from each designated sampling location. Conditions S4.B.3.a of the 2020 Permit and S4.B.3 of the 2025 Permit require Defendant to collect stormwater samples at each distinct point of discharge offsite except for substantially identical outfalls, in which case only one of the substantially identical outfalls must be sampled. Importantly, the exception to sampling each point of discharge in S4.B.2.c does not apply to any point of discharge subject to numeric effluent limitations. These conditions set forth sample collection criteria but require the collection of a sample even if the criteria cannot be met.

The facility has at least three distinct points of discharge off-site: Outfall 001, Outfall 010, and Outfall 012, as well as other additional unnamed distinct discharge points around the perimeter of the site.

Defendant violated these requirements by failing to collect stormwater samples at any of its discharge points during the third quarter 2022 and third quarter 2024, and by failing to collect stormwater samples at Outfall 010 during the second quarter 2021, and by failing to collect stormwater samples at Outfalls 001 and 010 during the first quarter 2024.

Defendant has also violated and continues to violate these conditions because it does not sample each distinct point of discharge off-site. These violations have occurred and continue to occur each and every quarter during the last five years that Defendant was and is required to sample its stormwater discharges, including the quarters in which it collected stormwater discharge samples from some, but not each, point of discharge. These violations will continue until Defendant commences monitoring all distinct points of discharge.

### B. Failure to Comply with Visual Monitoring Requirements

Conditions S7.A and B of the Permits require that monthly visual inspections be conducted at the facility by qualified personnel. Each inspection is to include observations made at stormwater sampling locations and areas where stormwater associated with industrial activity is discharged, observations for the presence of floating materials, visible oil sheen, discoloration, turbidity, odor, etc. in the stormwater discharges, observations for the presence of illicit discharges or illicit connections, a verification that the descriptions of potential pollutant sources required by the permit are accurate, a verification that the site map in the SWPPP reflects current conditions, and an assessment of all BMPs that have been implemented (noting the effectiveness of the BMPs

inspected, the locations of BMPs that need maintenance, the reason maintenance is needed and a schedule for maintenance, and locations where additional or different BMPs are needed). Once annually, dumpsters must be inspected for holes or defects.

Condition S7.C of the Permits requires that Defendant record the results of each inspection in an inspection report or checklist that is maintained on-site and that documents the observations, verifications, and assessments required. The report/checklist must include the time and date of the inspection, the locations inspected, a statement that, in the judgment of the person conducting the inspection and the responsible corporate officer, the facility is either in compliance or out of compliance with the SWPPP and the Permits, a summary report and schedule of implementation of the remedial actions that Defendant plans to take if the site inspection indicates that the facility is out of compliance, the name, title, signature and certification of the person conducting the facility inspection, and a certification and signature of the responsible corporate officer or a duly authorized representative.

Defendant is in violation of these requirements of Condition S7 of the Permits because, during the last five years, it has failed to conduct each of the requisite visual monitoring and inspections, failed to prepare and maintain the requisite inspection reports or checklists, and failed to make the requisite certifications and summaries.

## IV. CORRECTIVE ACTION VIOLATIONS

### A. Violations of the Level One Requirements

Condition S8.B of the Permits requires Defendant to take specified actions, called a "Level One Corrective Action," each time quarterly stormwater sample results exceed a benchmark value or are outside the benchmark range for pH.

As described by Condition S8.B of the Permits, a Level One Corrective Action requires Defendant to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits and contains the correct BMPs from the applicable Stormwater Management Manual; (2) make appropriate revisions to the SWPPP to include additional operational source control BMPs with the goal of achieving the applicable benchmark values in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.6 of the Permits; and (3) summarize the Level One Corrective Action in the Annual Report required under Condition S9.B of the Permits. Condition S8.B.3 of the 2020 Permit and S8.B.2 of the 2025 Permit requires Defendant to implement the revised SWPPP as soon as possible, and no later than the DMR due date for the quarter the benchmark was exceeded.

Condition S5.A and Table 2 of the Permits establishes the following benchmarks: turbidity 25 NTU; pH 5 – 9 SU; total copper 14 µg/L; and total zinc 117 µg/L.

Defendant has violated the requirements of the Permits described above by failing to conduct a Level One Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, and the required summarization in the annual report each time in the last five

years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH, including the benchmark excursions listed (in bold) in Table 1 above.

**B. Violations of the Level Two Requirements**

Condition S8.C of the Permits requires Defendant to take specified actions, called a "Level Two Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any two quarters during a calendar year.

As described by Condition S8.C of the Permits, a Level Two Corrective Action requires Defendant to: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional structural source control BMPs in all areas/discharge points that exceeded the benchmark parameter with the goal of achieving the applicable benchmark value(s) in future discharges and sign and certify the revised SWPPP in accordance with Condition S3.A.5 of the Permits; and (3) summarize the Level Two Corrective Action (planned or taken) in the Annual Report required under Condition S9.C of the Permits. Condition S8.C.4 of the Permits requires Defendant implement the revised SWPPP according to Condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later August 31st of the following year.

The Permits establish the benchmarks applicable to Defendant described in section IV.A of this notice of intent to sue letter.

Defendant has violated the requirements of the Permits described above by failing to conduct a Level Two Corrective Action in accordance with permit conditions, including the required review, revision and certification of the SWPPP, the required implementation of additional BMPs, including additional structural source control BMPs, and the required summarization in the annual report each time in the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any two quarters during a calendar year. As indicated (in bold) in Table 1 above, these violations include, but are not limited to, Defendant's failure to fulfill these obligations for total zinc triggered by its stormwater sampling during calendar year 2020, for turbidity triggered by its stormwater sampling during calendar year 2021, for total zinc triggered by its stormwater sampling during calendar year 2022, and for total zinc triggered by its stormwater sampling during calendar year 2024.

**C. Violations of the Level Three Requirements**

Condition S8.D of the Permits requires Defendant to take specified actions, called a "Level Three Corrective Action," each time quarterly stormwater sample results exceed an applicable benchmark value or are outside the benchmark range for pH for any three quarters during a calendar year.

As described by Condition S8.D of the Permits, a Level Three Corrective Action requires Defendant: (1) review the SWPPP for the facility and ensure that it fully complies with Condition S3 of the Permits; (2) make appropriate revisions to the SWPPP to include additional treatment BMPs in all areas/discharge points that exceeded the benchmark parameter with the goal of achieving the applicable benchmark value(s) in future discharges and additional operational and/or structural source control BMPs if necessary for proper function and maintenance of treatment BMPs, and sign and certify the revised SWPPP in accordance with Condition S3.A.5 of the Permits; and (3) summarize the Level Three Corrective Action (planned or taken) in the Annual Report required under Condition S9.C of the Permits, including information on how monitoring, assessment, or evaluation information was (or will be) used to determine whether existing treatment BMPs will be modified/enhanced, or it new/additional treatment BMPs will be installed. Condition S8.D.2 of the Permits requires that a licensed professional engineer, geologist, hydrogeologist, of certified professional in stormwater quality must review, sign, and certify the portion of the SWPPP that addresses stormwater treatment structures or processes. *See* Permit Appendix 2 (defining “qualified industrial stormwater professional”).

Condition S8.D.3 of the Permits requires that, before installing BMPs that require the site-specific design or sizing of structures, equipment, or processes to collect, convey, treat, reclaim, or dispose of industrial stormwater, the Defendant submit an engineering report, plans, and specifications, and an operations and maintenance manual to Ecology for review in accordance with chapter 173-204 of the Washington Administrative Code. The engineering report must be submitted no later than six months after the last day of the calendar year in which the Level 3 was triggered (2025 Permit) or by the May 15th prior to the Level 3 deadline (2020 Permit). The plans and specifications and the operations and maintenance manual must be submitted to Ecology no later than 30 days after construction/installation is complete.

Condition S8.D.5 of the Permits requires Defendant fully implement the revised SWPPP according to condition S3 of the Permits and the applicable stormwater management manual as soon as possible, and no later than September 30th of the following year.

The Permits establish the benchmarks applicable to Defendant described in section IV.A of this notice of intent to sue letter.

Defendant has violated the requirements of the Permits described above by failing to conduct a Level Three Corrective Action in accordance with permit conditions, including: the required review, revision and certification of the SWPPP; the requirement to have a specified professional sign and certify the portion of the SWPPP pertaining to treatment; the required implementation of additional BMPs, including additional treatment BMPs; the required submission of an engineering report, plans, specifications, and an operations and maintenance plan; and the required summarization in the annual report each time in the last five years its quarterly stormwater sampling results were greater than a benchmark or outside the benchmark range for pH for any three quarters during a calendar year. As indicated (in bold) in Table 1 above, these violations include, but are not limited to, Defendant’s failure to fulfill these obligations for turbidity triggered by its stormwater sampling during calendar year 2022, and for total zinc and turbidity triggered by its stormwater sampling during calendar year 2023.

On May 20, 2025, Defendant requested a modification for permit coverage seeking a time extension for its Level Three Corrective Action triggered during calendar year 2023. Ecology denied that request on June 26, 2025, and confirmed that Defendant was indeed in violation of these permit conditions.

## V. EFFLUENT LIMITATION VIOLATIONS

Condition S6.C of the Permits requires that Permittees discharging to a "303(d)-listed" waterbody (Water Quality Category 5), either directly or indirectly through a stormwater drainage system, must comply with the applicable sampling requirements and numeric effluent limits in Table 6 of the Permits. The "applicable sampling requirements and numeric effluent limits" means the sampling and effluent limits in Table 6 that correspond to the specific parameter(s) the receiving water is 303(d)-listed for at the time of permit coverage, or Total Suspended Solids (TSS) if the waterbody is 303(d)-listed for sediment quality at the time of permit coverage.

Defendant discharges to Mill Creek, which is 303(d)-listed for zinc. Under the 2020 Permit, Defendant's discharges were subject to a maximum daily effluent limitation of 70 µg/L for Zinc. Under the 2025 Permit, Defendant's discharges are subject to a maximum daily effluent limitation of 32.7 µg/L for Zinc. Defendant's 2020 and 2025 zinc effluent limits are site-specific. *See* Permits, Table 6, footnote g.

Defendant discharges stormwater that contains elevated levels of zinc in excess of the corresponding numeric effluent limitation, as indicated in the table of effluent limitation violations below. Each and every one of these discharges is a separate violation of the Permits. These numeric effluent limitation violations also occurred each and every day over the past five years on which there is at least 0.1 inch of precipitation in a 24-hour period and are reasonably likely to recur.

**Table 2 – Numeric Effluent Limitation Violations**

| **Quarter in which sample collected** | **Total Zinc (Effluent Limit 70 µg/L 2020; 32.7 µg/L 2025)** |
|---|---|
| Q2 2021<br>001<br>010<br>012 | <br>89<br><br>74 |
| Q3 2021<br>001<br>010<br>012 | <br><br>88<br>100 |
| Q4 2021<br>001<br>010<br>012 | <br><br>82 |

| | |
|---|---|
| Q1 2022<br>001<br>010<br>012 | 260<br>120 |
| Q4 2022<br>001<br>010<br>012 | 91<br>84<br>175 |
| Q1 2023<br>001<br>010<br>012 | 220<br>150 |
| Q2 2023<br>001<br>010<br>012 | 120<br>85 |
| Q3 2023<br>001<br>010<br>012 | 120<br>160 |
| Q4 2023<br>001<br>010<br>012 | 190<br>270 |
| Q1 2024<br>001<br>010<br>012 | 120 |
| Q2 2024<br>001<br>010<br>012 | 94<br>190 |
| Q4 2024<br>001<br>010<br>012 | 100<br>82 |
| Q1 2025<br>001<br>010<br>012 | 84<br>120.5<br>119 |

| | |
|---|---|
| Q2 2025<br>001<br>010<br>012 | 36<br>39 |
| Q3 2025<br>001<br>010<br>012 | 39<br>79<br>81 |
| Q4 2025<br>001<br>010<br>012 | 39<br>78 |

## VI. VIOLATIONS OF THE ANNUAL REPORT REQUIREMENTS

Condition S9.C of the Permits require Defendant to submit an accurate and complete annual report to Ecology no later than May 15 of each year. The annual report must include corrective action documentation as required in Condition S8.B – D of the Permits. If a corrective action is not yet completed at the time of submission of the annual report, Defendant must describe the status of any outstanding corrective action. Specific information to be included in the annual report is identification of the conditions triggering the need for corrective action, description of the problem and identification of dates discovered, summary of any Level 1, 2, or 3 corrective actions completed during the previous calendar year, including the dates corrective actions were completed, and description of the status of any Level 2 or 3 corrective actions triggered during the previous calendar year, including identification of the date Defendant expects to complete corrective actions.

Defendant has violated this condition. Defendant did not submit annual reports for 2020 (in 2021), for 2021 (in 2022), or for 2022 (in 2023). The annual report submitted by Defendant for 2023 (in 2024) does not include the required information. Specifically, the report does not address the turbidity and zinc benchmark exceedances, and there is no description of the additional treatment BMPs Defendant implemented or plans to implement as part of its Level 3 corrective actions. The annual report submitted by Defendant for 2024 (in 2025) does not include the required information. Specifically, the report the report does not address the zinc benchmark exceedances, does not identify the second quarter zinc benchmark exceedance, and there is no description of the additional structural source control BMPs Defendant implemented or plans to implement as part of its Level 2 corrective actions.

## VII. VIOLATIONS OF THE RECORDKEEPING REQUIREMENTS

### A. Failure to Record Information

Condition S4.B.4 of the Permits requires Defendant record and retain specified information for each stormwater sample taken, including the sample date and time, a notation describing if Defendant collected the sample within the first 12 hours of stormwater discharge event, an

explanation of why Defendant could not collect a sample within the first 12 hours of a stormwater discharge event, the sample location, method of sampling and of preservation, and the individual performing the sampling. Defendant is in violation of these conditions as it has not recorded each of these specified items for each sample taken during the last five years.

### B. Failure to Retain Records

Condition S9.D of the 2020 Permits require Defendant to retain for a minimum of five years a copy of the current Permit, a copy of Defendant's coverage letter, records of all sampling information, inspection reports including required documentation, any other documentation of compliance with permit requirements, all equipment calibration records, all BMP maintenance records, all original recordings for continuous sampling instrumentation, copies of all laboratory results, copies of all required reports, and records of all data used to complete the application for the Permit. Defendant is in violation of these conditions because it has failed to retain records of such information, reports, and other documentation during the last five years.

## VIII. FAILURE TO REPORT PERMIT VIOLATIONS

Condition S9.F of the Permits requires Defendant to take certain actions in the event Defendant is unable to comply with any of the terms and conditions of the Permits which may endanger human health or the environment, or exceed any numeric effluent limitation in the permit. In such circumstances, Defendant must immediately take action to minimize potential pollution or otherwise stop the noncompliance and correct the problem, and Defendant must immediately notify the appropriate Ecology regional office of the failure to comply. Defendant must then submit a detailed written report to Ecology, including specified details, within 5 days of the time Defendant became aware of the circumstances, unless Ecology requests an earlier submission.

Defendant routinely violates these requirements, including each and every time Defendant exceeded the numeric effluent limitation, as specified in Table 2, above; each and every time Defendant failed to comply with the corrective action requirements described in section IV of this notice of intent to sue; and each and every time Defendant discharged stormwater with concentrations of pollutants in excess of the Permit benchmarks, as described in Table 1, above. All these violations may endanger human health or the environment.

## IX. FAILURE TO COMPLY WITH ADMINISTRATIVE ORDER 23791

Defendant is in violation of AO 23791 as follows:

a. The AO required Defendant to submit a quarterly project status report to Ecology on its progress in completing key milestones by October 1, 2025. Defendant did not submit its report until October 8, 2025.

b. The AO required Defendant to submit a quarterly project status report to Ecology on its progress in completing key milestones by April 1, 2026. Defendant did not submit its report until April 3, 2026.

## X. REQUEST FOR SWPPP

Pursuant to Condition S9.G of the Permits, Puget Soundkeeper Alliance hereby requests that Defendant Amazon.com Services LLC. provide a copy of, or access to, its SWPPP complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs. The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should Defendant fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.G of the Permits, it will be in violation of that condition, which violation shall also be subject to this notice of intent to sue and any ensuing lawsuit.

## XI. CONCLUSION

The above-described violations reflect those indicated by the information currently available to Puget Soundkeeper Alliance. These violations are ongoing. Puget Soundkeeper Alliance intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $68,445 per violation per day. *See* 40 C.F.R. § 19.4. In addition to civil penalties, Puget Soundkeeper Alliance will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law. Further, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Puget Soundkeeper Alliance believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against Defendant Amazon.com Services LLC. under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly. We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Sincerely,

SMITH & LOWNEY, PLLC

By: */s/Claire Tonry*
Claire Tonry
Katelyn Kinn

cc: Lee Zeldin, Administrator, U.S. EPA
Emma Pokon, Region 10 Administrator, U.S. EPA
Casey Sixkiller, Director, Washington Department of Ecology
Corporation Service Company, Registered Agent (300 Deschutes Way SW Ste 208 MC-CSC1, Tumwater, WA 98501)

# Exhibit 2

SMITH & LOWNEY
PLLC
ATTORNEYS AT LAW

July 20, 2026

**Via Certified Mail - Return Receipt Requested**

Managing Agent
Amazon.com Services LLC BF15
20526 59th Pl S
Kent, WA 98032

Managing Agent
Amazon.com Services LLC
410 Terry Ave N
Seattle, WA 98109

Managing Agent
Amazon.com Services LLC
PO Box 80842
Seattle WA 98108-0842

Managing Agent
Amazon.com BFI5
PO Box 80842
Kent, WA, 98032

Re: **SUPPLEMENTAL NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND REQUEST FOR COPY OF STORMWATER POLLUTION PREVENTION PLAN**

Dear Managing Agent:

As you know, we represent Puget Soundkeeper Alliance ("Soundkeeper"), 130 Nickerson St. #107, Seattle, WA 98109, (206) 297-7002. Any response or correspondence related to this matter should be directed to us at the letterhead address (Smith & Lowney, PLLC, 2317 E John St., Seattle, WA 98112). This letter is to provide you with sixty days' notice of Soundkeeper's intent to file a citizen suit against Amazon.com Services LLC ("Amazon") under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described below. To be clear, we believe Soundkeeper's prior notice letter encompasses the violations described below. We provide this notice as a supplement to Soundkeeper's prior notice letter in an overabundance of caution and to highlight the serious ongoing violations with respect to operations of, and discharges of stormwater and pollutants from, Amazon's facility located at or about 20526 59th Pl S, Kent,

WA 98032 (the "facility") to Mill Creek. This letter is also a request for a copy of the complete and current stormwater pollution prevention plan ("SWPPP") required by Amazon's National Pollution Discharge Elimination System ("NPDES") permit.

Amazon was first granted coverage under Washington's Industrial Stormwater General Permit ("ISGP") issued by the Washington Department of Ecology ("Ecology") in 2018 under NPDES No. WAR304510. Amazon was granted coverage under the next iteration of the ISGP. which was effective January 1, 2020 and expired on December 31, 2024 (the "2020 Permit") again under NPDES No. WAR304510. Ecology granted Amazon coverage under the current iteration of the ISGP effective January 1, 2025, and set to expire on December 31, 2029 (the "2025 Permit") and maintains the same permit number, WAR304510.

Amazon has violated and continues to violate effluent standards and limitations under the CWA (see 33 U.S.C. §§ 1365(f)) including the terms and conditions of the 2020 Permit and the 2025 Permit (collectively, the "Permits") with respect to operations of, and discharges of stormwater and pollutants from, the facility to Mill Creek. The facility subject to this notice includes any contiguous or adjacent properties owned or operated by Amazon.

## I. COMPLIANCE WITH STANDARDS.

### A. Violations of Water Quality Standards

As stated in Soundkeeper's prior notice letter, Condition S10.A of the Permits prohibits discharges that cause or contribute to violations of water quality standards. Water quality standards are the foundation of the CWA and Washington's efforts to protect clean water. In particular, water quality standards represent the U.S. Environmental Protection Agency ("EPA") and Ecology's determination, based on scientific studies, of the thresholds at which pollution starts to cause significant adverse effects on fish or other beneficial uses. For each water body in Washington, Ecology designates the "beneficial uses" that must be protected through the adoption of water quality standards.

A discharger must comply with both narrative and numeric criteria water quality standards. WAC 173-201A-010; WAC 173-201A-510 ("No waste discharge permit can be issued that causes or contributes to a violation of water quality criteria, except as provided for in this chapter."). Narrative water quality standards provide legal mandates that supplement the numeric criteria. Furthermore, the narrative water quality standard applies with equal force even if Ecology has established a numeric water quality standard. Specifically, Condition S10.A of the Permits requires that the facility's discharges not cause or contribute to an excursion of Washington State water quality standards.

Amazon discharges polluted stormwater to Mill Creek via drains and pipes. The section of Mill Creek to which Amazon discharges does not meet water quality standards and is included on the state's "303(d) list" of impaired waterbodies. Amazon discharges stormwater that contains elevated levels of turbidity, oil & grease, copper, zinc, and tire wear particles (and attendant 6PPD-Quinone) as indicated in discharge monitoring data reported under the Permit, and related reports submitted by Amazon to Ecology, as indicated in the table(s) of benchmark and numeric effluent limit excursions below. These discharges cause and/or contribute to violations of

water quality standards for turbidity, oil & grease, total copper, total zinc, and 6PPD-Quinone (and related toxicity) in Mill Creek, the Black River, and ultimately into the Green/Duwamish River(s), and have occurred each and every day during the last five years on which there was 0.1 inch or more of precipitation and continue to occur. *See* WASH. ADMIN. CODE §§ 173-201A-200 (fresh water designated uses and criteria), (1)(a)(b) (general criteria that apply to all aquatic life fresh water uses), 1(e) (turbidity criteria), 2(a) (general criteria applicable to fresh water recreational uses), (4) (miscellaneous uses including wildlife habitat, harvesting commerce and navigation, boating, and aesthetics general criteria); 173-201A-600 (use designations – fresh waters); 172-201A-602 (use designations for fresh waters by water resource inventory area, including the Green/Duwamish); 173-201A-240 (toxic substances criteria for copper and zinc); 173-201A-260 (natural conditions and other water quality criteria and applications).

**Table 1 – Effluent Limit and Benchmark Exceedances**

| **Quarter in which sample collected** | **Turbidity (Benchmark 25 NTU)** | **Oil & Grease (Benchmark No Visible Sheen)** | **Total Copper (Benchmark 14 µg/L)** | **Total Zinc (Benchmark 117 µg/L;** Effluent Limit 60.47 µg/L) |
|---|---|---|---|---|
| 1st Quarter 2020<br>001<br>010<br>012 | | | | <br>**140 µg/L**<br>**580**<br> |
| 2nd Quarter 2020<br>001<br>010<br>012 | <br><br>**88 NTU**<br>**38.8** | | | <br>110<br>**220**<br>**210** |
| 4th Quarter 2020<br>001<br>010<br>012 | | | | <br><br>71<br>95 |
| 1st Quarter 2021<br>001<br>010<br>012 | | | | <br><br>**150**<br>**170** |
| 2nd Quarter 2021<br>001<br>010<br>012 | | | | <br>89<br><br>74 |
| 3rd Quarter 2021<br>001<br>010<br>012 | <br><br>**59.5**<br>**57.7** | | | <br><br>88<br>100 |

| | | | | |
|---|---|---|---|---|
| 4th Quarter 2021<br>001<br>010<br>012 | <br>**29.15**<br><br> | | | <br><br>82<br> |
| 1st Quarter 2022<br>001<br>010<br>012 | <br><br>**44.6**<br> | | <br><br>**16 µg/L**<br> | <br><br>**260**<br>**120** |
| 2nd Quarter 2022<br>001<br>010<br>012 | <br>**40.7**<br><br>**27.9** | | | |
| 4th Quarter 2022<br>001<br>010<br>012 | <br>**35.55**<br><br>**40.4** | | | <br>91<br>84<br>**175** |
| 1st Quarter 2023<br>001<br>010<br>012 | <br><br>**31.2**<br> | | | <br><br>**220**<br>**150** |
| 2nd Quarter 2023<br>001<br>010<br>012 | <br>**36.4**<br><br> | | | <br><br>**120**<br>85 |
| 3rd Quarter 2023<br>001<br>010<br>012 | | | | <br><br>**120**<br>**160** |
| 4th Quarter 2023<br>001<br>010<br>012 | <br><br>**56.8**<br>**60.7** | <br><br>**Yes**<br> | | <br><br>**190**<br>**270** |
| 1st Quarter 2024<br>001<br>010<br>012 | | | | <br><br><br>**120** |
| 2nd Quarter 2024<br>001<br>010<br>012 | <br><br><br>**32.5** | | | <br><br>94<br>**190** |
| 4th Quarter 2024<br>001<br>010<br>012 | | | | <br><br>100<br>82 |

| | | | | |
|---|---|---|---|---|
| 1st Quarter 2025<br>001<br>010<br>012 | | | | <br>84<br>**120.5**<br>**119** |
| 3rd Quarter 2025<br>001<br>010<br>012 | | | | <br><br>79<br>81 |
| 4th Quarter 2025<br>001<br>010<br>012 | | | | <br><br><br>78 |
| 1st Quarter 2026<br>001<br>010<br>012 | <br><br>45<br>70 | | <br><br>16 | <br><br>380<br>400 |

## II. EFFLUENT LIMITATION VIOLATIONS

Condition S6.C of the Permits requires that Permittees discharging to a "303(d)-listed" waterbody (Water Quality Category 5), either directly or indirectly through a stormwater drainage system, must comply with the applicable sampling requirements and numeric effluent limits in Table 6 of the Permits. The "applicable sampling requirements and numeric effluent limits" means the sampling and effluent limits in Table 6 that correspond to the specific parameter(s) the receiving water is 303(d)-listed for at the time of permit coverage, or Total Suspended Solids (TSS) if the waterbody is 303(d)-listed for sediment quality at the time of permit coverage.

Amazon discharges to Mill Creek, which is 303(d)-listed for zinc (Water Quality Category 5). Amazon discharges stormwater that contains elevated levels of zinc in excess of the corresponding numeric effluent limitation, as indicated in the table of effluent limitation violations below. Each and every one of these discharges is a separate violation of the Permits. These numeric effluent limitation violations also occurred each and every day over the past five years on which there is at least 0.1 inch of precipitation in a 24-hour period and are reasonably likely to recur.

**Table 2 – Numeric Effluent Limitation Violations**

| **Quarter in which sample collected** | **Total Zinc (Effluent Limit 60.47 µg/L)** |
|---|---|
| Q2 2021<br>001<br>010<br>012 | <br>89<br><br>74 |

| | |
|---|---|
| Q3 2021<br>001<br>010<br>012 | <br><br>88<br>100 |
| Q4 2021<br>001<br>010<br>012 | <br><br>82<br> |
| Q1 2022<br>001<br>010<br>012 | <br><br>260<br>120 |
| Q4 2022<br>001<br>010<br>012 | <br>91<br>84<br>175 |
| Q1 2023<br>001<br>010<br>012 | <br><br>220<br>150 |
| Q2 2023<br>001<br>010<br>012 | <br><br>120<br>85 |
| Q3 2023<br>001<br>010<br>012 | <br><br>120<br>160 |
| Q4 2023<br>001<br>010<br>012 | <br><br>190<br>270 |
| Q1 2024<br>001<br>010<br>012 | <br><br><br>120 |

| | |
|---|---|
| Q2 2024 | |
| 001 | |
| 010 | 94 |
| 012 | 190 |
| Q4 2024 | |
| 001 | |
| 010 | 100 |
| 012 | 82 |
| Q1 2025 | |
| 001 | 84 |
| 010 | 120.5 |
| 012 | 119 |
| Q3 2025 | |
| 001 | |
| 010 | 79 |
| 012 | 81 |
| Q4 2025 | |
| 001 | |
| 010 | |
| 012 | 78 |
| Q1 2026 | |
| 001 | |
| 010 | 380 |
| 012 | 400 |

## III. VIOLATIONS OF THE ANNUAL REPORT REQUIREMENTS

Condition S9.C of the Permits require Amazon to submit an accurate and complete annual report to Ecology no later than May 15 of each year. The annual report must include corrective action documentation as required in Condition S8.B – D of the Permits. If a corrective action is not yet completed at the time of submission of the annual report, Amazon must describe the status of any outstanding corrective action. Specific information to be included in the annual report is identification of the conditions triggering the need for corrective action, description of the problem and identification of dates discovered, summary of any Level 1, 2, or 3 corrective actions completed during the previous calendar year, including the dates corrective actions were completed, and description of the status of any Level 2 or 3 corrective actions triggered during the previous calendar year, including identification of the date Amazon expects to complete corrective actions.

Amazon has violated this condition. Amazon did not submit annual reports for 2020 (in 2021), for 2021 (in 2022), or for 2022 (in 2023). The annual report submitted by Amazon for 2023 (in 2024) does not include the required information. Specifically, the report does not address the turbidity benchmark exceedances or zinc effluent limit exceedances, and there is no description of the additional treatment BMPs Amazon implemented or plans to implement as part of its Level 3 corrective actions. The annual report submitted by Amazon for 2024 (in 2025) does not include the required information. Specifically, the report the report does not address the zinc effluent limit exceedances, does not identify the second quarter zinc effluent limit exceedance, and there is no description of the additional structural source control BMPs Amazon implemented or plans to implement as part of its Level 2 corrective actions.

## IV. FAILURE TO PROVIDE ACCURATE INFORMATION

Condition S2 of the Permits requires Amazon, to submit to Ecology a complete and accurate Notice of Intent for coverage under the ISGP. Condition S4.B.2.e. of the Permits requires Amazon to notify Ecology of any changes or updates to sample locations, discharge points, and/or outfalls by submitting an "Industrial Stormwater General Permit Discharge/Sample Point Update Form" to Ecology. Condition G10 of the Permits requires that Amazon submit to Ecology, within a reasonable time, all information which Ecology may request to determine whether cause exists for modifying, revoking and reissuing, or terminating the Permit or to determine compliance with the Permit. Amazon must also submit to Ecology, upon request, copies of records required to be kept by this permit. Condition G20 of the Permits requires that, where the Permittee becomes aware that it failed to submit any relevant facts in a permit application, or submitted incorrect information in a permit application or in any report to Ecology, it shall promptly submit such facts or information.

Ecology's permit application form (titled "Notice of Intent Industrial Stormwater General Permit") and Ecology's permit renewal form (titled "Request for Coverage Industrial Stormwater General Permit") both request applicants provide specific information which Ecology uses to determine whether cause exists to modify, revoke, reissue, or terminate permit coverage. Among these information requests made on both the permit application form and the permit renewal form is a request to provide the latitude/ longitude coordinates for the "Location of Discharge into Receiving Water (Outfall)." In addition, Ecology has requested Amazon provide corrected outfall location, receiving water, and related information on multiple occasions, the dates and details of which are in Amazon's possession.

Amazon has long violated Conditions S2, S4B.2.e., G10, and G20 of the Permits by submitting applications for permit coverage and renewal that included inaccurate information and failing to correct the record, including in response to Ecology requests.

Amazon's original application for permit coverage submitted on July 11, 2018 included inaccurate latitude/longitude coordinates for its discharge into receiving water (outfall). Amazon's requests for coverage seeking permit renewal submitted on June 20, 2019 and June 24, 2024 also included inaccurate latitude/longitude coordinates for its discharge into receiving water (outfall). All three aforementioned permit applications provided inaccurate information, specifically that Amazon was discharging to surface water at a location several blocks to the south, on the other

side of a different facility, via a tributary to the Green River. All the while, Amazon has known that the Facility in fact discharges to Mill Creek. Amazon's applications certified information to Ecology as true which Amazon knew was not the truth.

## V. REQUEST FOR SWPPP

Pursuant to Condition S9.G of the Permits, Puget Soundkeeper Alliance hereby requests that Amazon.com Services LLC provide a copy of, or access to, its SWPPP complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs. The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

Should Amazon fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.G of the Permits, it will be in violation of that condition, which violation shall also be subject to this notice of intent to sue and any ensuing lawsuit.

## VI. CONCLUSION

The above-described violations reflect those indicated by the information currently available to Puget Soundkeeper Alliance. These violations are ongoing. Puget Soundkeeper Alliance intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $68,445 per violation per day. *See* 40 C.F.R. § 19.4. In addition to civil penalties, Puget Soundkeeper Alliance will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law. Further, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Puget Soundkeeper Alliance believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against Amazon.com Services LLC under Section 505(a) of the Clean Water Act and/or to supplement any already pending complaint.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly. We do not intend to delay the filing of a complaint or amended complaint if discussions are continuing when the notice period ends.

Sincerely,

SMITH & LOWNEY, PLLC

By: */s/Claire Tonry*
Claire Tonry
Katelyn Kinn

cc: Lee Zeldin, Administrator, U.S. EPA

Emma Pokon, Region 10 Administrator, U.S. EPA

Casey Sixkiller, Director, Washington Department of Ecology

Corporation Service Company, Registered Agent (300 Deschutes Way SW Ste 208 MC-CSC1, Tumwater, WA 98501)

Counsel for Amazon.com (Erika Spanton, Timothy Sullivan, Georgia Spies, Beverage & Diamond, via email only: ESpanton@bdlaw.com, TSullivan@bdlaw.com, GSpies@bdlaw.com)